Guiseppe RUSSO, Appellee,

v.

UNITED STATES of America, Appellant,

and

Universal Terminal & Stevedoring Co., Appellee.

No. 162, Docket 23656.

United States Court of Appeals Second Circuit.

Argued Nov. 17, 1955.

Decided Dec. 13, 1955.

Arthur M. Boal, New York City, for appellant, United States.

Bernard Meyerson, New York City, for libellant-appellee.

Patrick E. Gibbons, New York City, for Universal Terminal & Stevedoring Co.

Before HAND, FRANK and MEDINA, Circuit Judges.

PER CURIAM.

 This appeal raises only questions of fact; but, being in the admiralty, the findings are open to the same review as in the case of findings by a judge in a suit in equity, or in an action at law not tried to a jury. Although it is not clear to us why the judge should have so entirely discredited the testimony of Burns, we regard ourselves as bound to follow his opinion *pro tanto*, and we will therefore decide the appeal as though this witness had not seen the accident at all, as the judge believed. However, the libellant must recover on the strength of his own case and not on the weakness of the respondent's; and, after making every allowance for the favorable impression that the libellant's two witnesses to the accident made upon the judge, the conclusion appears to us "clearly erroneous" that the "up and down" winch could have started, as the man at the winch described. We do not say that the handle that turned the current into that winch and cut it off, could not have been bent three inches, or whatever bend was necessary to let the current run while the handle appeared to be at neutral. While it is hard to see how the handle could have been that much bent by any blows that would not have wrecked the "control box" itself, the respondent's failure to produce the actual handle has been enough to satisfy a majority of the court that we should not reverse on the ground that the handle could not have been bent. What we cannot accept, however, is the testimony of d'Ambrosio, the winchman, the substance of which was as follows: "For a half minute it would stop and then it would start again." "When it was in neutral, a half minute later it would start to go * * * 15, 20 times a day." "I didn't touch the winch; I was awaiting orders from the gangwayman." "I was watching the gangwayman and all at once the winch start in going ahead."

There is no escape from taking this testimony to mean that at least thirty seconds after the witness moved the handle to a position in which it turned off the current and stopped the winch, it started to revolve of itself; that is, without any change in the position of the handle at which it had successfully cut out the current. It is one thing to say that, when the handle was put at neutral it did not cut off the current; one can imagine that that might happen. Indeed, it would do so, if the handle were bent so that it did not cut off the current when it showed itself at neutral on the dial on the outside of the "control box." But it is quite another thing to say that, after the winch had come to a stop by a motion of the handle, it would start up again without any change in the position of the handle. Yet this is what we must accept, if the only testimony is true which describes what happened—testimony, incidentally, that came from the mouth of a longshoreman, who was almost certainly unacquainted with the structure of the winch and who spoke through an interpreter.

True, we should have no warrant for taking judicial notice of how the winch might get out of order, but we do have enough acquaintance with the action of electric currents to know that they must pass in an uninterrupted circuit in order to energize a mechanism like a winch. Moreover, we know that, if the winch is once in motion the circuit must be in some way interrupted, or some resistance must be introduced into the circuit, to stop it. According to the winchman a change in the position of the handle had broken the circuit, or had thrown in some resistance; and he had not touched it when the winch started. Hence something must have happened to complete the circuit again, or to throw out a resistance; and if that happened again

and again as the witness testified, there must have been some agent sporadically interrupting and restoring the circuit, in addition to the movement of the handle. We cannot agree that it was permissible on the word of such a witness to find that the current acted as though it was bewitched. If d'Ambrosio's testimony was to be accepted, it was essential for the libellant to introduce some evidence of those competent to explain how an electric winch could so behave. As for the witness, Wolossow, it is not debatable that he never meant to say that there was any trouble whatever with the starboard winch. The statement in which he spoke of that winch he did not write; it was obtained from him by the other side. Unfettered as we are in judging his deposition, we are satisfied that this deviation from his repeated statements that the trouble was with the port winch, was at best a mistake of the person who took it down.

The decree will be reversed, and the cause remanded for further proceedings consistent with the foregoing opinion.